IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>ROBERT HALPIN,<br><br>     Reputed Debtor.<br><br>_____<br><br>A.G. CULLEN CONSTRUCTION, INC.,<br><br>     Plaintiff,<br>          vs.<br><br>ROBERT HALPIN,<br><br>     Defendant. | Case No. 18-22057-CMB<br><br>Chapter 7<br><br><br>Adv. Pro. No. _____ |

**COMPLAINT (1) OBJECTING TO GENERAL DISCHARGE AND
(2) FOR DETERMINATION OF DISCHARGABILITY OF DEBT**

A.G. Cullen Construction, Inc., by and through their counsel, for their complaint against Robert Halpin alleges as follows:

**JURSIDICTION**

1.  Plaintiff A.G. Cullen Construction, Inc., (" Cullen") filed a Chapter 7 Involuntary Petition of the U.S. Bankruptcy Code 11 U.S.C. §303 against Robert Halpin ("Debtor") on May 22, 2018.

2.  Debtor filed a Motion to Dismiss the Involuntary Chapter 7 Petition on July 5, 2018.

3.  Plaintiff filed an Objection to the Reputed Debtor's Motion to Dismiss the Involuntary Chapter §7 Petition on July 23, 2018.

4.   By Order of Court dated July 7, 2020, the Reputed Debtor's Motion for Involuntary Petition filed by Robert Halpin at 18-22057-CMB was withdrawn.

5.   On July 28, 2020 the Honorable Judge Carlota Bohm, on consideration of the petition filed on May 21, 2018, against Defendant, granted an order for relief under chapter 7 of title 11 of the United States Code.

6.   Under said July 7, 2020 Order, A.G Cullen reserved the right to challenge the dischargeabilty of Robert Halpin's debt to Cullen, and Robert Halpin agreed to appear at a Chapter 7 Trustee's 341 meeting.

7.   This is an adversary proceeding in which the plaintiff-creditor is objecting to Debtor's discharge under Bankruptcy code §§ 727 (a)(2)(A), 727 (a)(2)(B), 727 (a)(3) and 727(a)(4)(A) and is seeking determination as to dischargability of the debt owed by the Debtor to Plaintiff under Bankruptcy Code §§ 523(a)(2)(A) and 523 (a)(4).

8.   The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C § 1334 and Bankruptcy Code §§ 523 and 727.

9.   This case is a core proceeding pursuant to 28 U.S.C § 157(b)(2)(I) and 157(b)(2)J).

## PARTIES

10. Plaintiff is a business corporation organized under the laws of the State of Pennsylvania, is authorized to do business in the State of Pennsylvania, and maintains its principal office at 18 1st Street, Pittsburgh, Pa 15215.

11. Plaintiff is a judgment creditor of the Debtor.

12. Defendant is the debtor in the above captioned case and it is believed that he now resides at 1400 Main Street, Canonsburg, Pa 15317.

## FACTUAL BACKGROUND

13. As stated, A.G. Cullen Construction, Inc. ("Cullen") is a business operating in the Commonwealth of Pennsylvania and a major creditor in the Debtor's bankruptcy case.

14. There is also one additional case related to the Debtor's bankruptcy case:

> Westgate Ventures, LLC ("Westgate") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") Bank. No.# 12-20111-CMB.

## GENESIS OF CLAIM AND DEBT

15. Cullen's claim in that case arises out of the failure of Debtor, Robert Halpin, using Westgate Ventures, LLC ("Westgate") as his alter ego, to meet his obligations under a certain subcontract for a project in Illinois.

16. Westgate contracted with Cullen, as a subcontractor, for a project in Illinois.  Halpin was paid as a general contractor but never paid Cullen, as a subcontractor.

17. Debtor was, along with his wife, Lori Halpin, a principal owner of Westgate from its creation.

18. Defendant Westgate Ventures, LLC, hired plaintiff A.G. Cullen Construction, Inc., to build a warehouse and distribution facility in Big Beaver, Pennsylvania. (Westgate was primarily owned by defendant Burnham Partners, LLC, which, in turn, was owned by defendant Robert Halpin.)

19. When the project neared completion, Westgate stopped paying Cullen.

20. In June of 2005, Cullen filed a demand for arbitration. A hearing took place in July 2007, and on September 7, 2007, the arbitrator entered an award in favor of Cullen and against Westgate. The award included $360,790.38 in unpaid contract work, $9,284.71 for extra work, $37,021.15 in attorney fees, $3,000 in arbitration costs, and $89,990.13 for interest and

penalties under the Pennsylvania Contractor and Subcontractor Payment Act (73 Pa. Cons. Stat. Ann. § 501 *et seq*. (West2008)). The arbitrator deducted $45,000 for liquidated damages and $3,680 for unperformed work under the contract, for a total award of $448,406.87.

21. On April 5, 2007, three months before the July 2007 arbitration hearing, Westgate sold the warehouse facility for $3.2 million. After the sale, Westgate engaged in no further business and Halpin began to wind up Westgate and liquidate its assets. From the proceeds of the sale Halpin paid $2,513,984.01 to S&T Bank, a secured creditor. With the remaining $686,015.99, Halpin disbursed to Northern Trust $120,000, the remaining balance on the $175,000 loan the Halpins made to Westgate; paid Burnham's development fee of $400,000, which was later transferred to Halpin; and gave an additional $70,000 to himself and his wife. Westgate was left with a remaining balance of $27,530.44, which Halpin transferred to himself on July 15, 2007, leaving Westgate with a zero balance in its operating account. Thus, when the Pennsylvania court entered the $457,416.37 judgment in favor of Cullen, Westgate had no remaining assets with which to pay the judgment.

22. On November 24, 2008, Cullen filed a complaint against defendants in the circuit court of Cook County to recover the amount owed by Westgate on the Pennsylvania judgment. Cullen's third amended, six-count complaint filed on December 5, 2011, alleged breach of fiduciary duty (count I), breach of section 18-804 of the Delaware Limited Liability Company Act (Del. Code Ann. tit. 6, § 18-804 (West 2008)) (count II), and violation of the Pennsylvania Contractor and Subcontractor Payment Act (73 Pa. Cons. Stat. Ann. § 501 *et seq*. (West 2008)) (count III), fraudulent conveyance against Westgate, Burnham, and the Halpins (count V), and against Westgate and the Halpins (count VI). Cullen also sought to pierce Westgate's corporate veil to hold Burnham and the Halpins jointly and severally liable.

23. During discovery, Cullen requested numerous documents, including Westgate's books, minutes, and records regarding corporate formalities, business activities, and debt. The Halpins failed to turn over many requested documents, claiming not to know what happened to them but suggesting that documents kept in their home were lost when they moved in 2007 and 2009.

24. While the case was pending, Westgate filed for bankruptcy in the United States District Court for the Western District of Pennsylvania. All claims against Westgate were stayed and, thus, only the claims against the other three defendants were litigated at trial.

25. After a bench trial, the circuit court entered judgment in defendants' favor on all counts and dismissed the complaint.

26. Cullen appealed the circuit court's decision contending: (i) the trial court abused its discretion by refusing its request for an adverse inference when defendants failed to produce numerous corporate records they claimed had been lost; (ii) defendants violated section 5 of the Uniform Fraudulent Transfer Act (UFTA or Act) (740 ILCS 160/5 (West 2012)) by liquidating all of Westgate's assets before the arbitration hearing; (iii) defendants violated section 18-804 of the Delaware Limited Liability Company Act (Del. Code Ann. tit. 6, § 18-804 (West 2008)) by fraudulently preferring one unsecured creditor over the other; (iv) the trial court erred in refusing to pierce the corporate veil to hold Halpin personally liable or the money Westgate owes to Cullen; and (v) defendants owed Cullen a fiduciary duty once Westgate became insolvent.

27. On March 11, 2015, the Illinois Appellate Court, First District, Third Division ("Illinois Appellate Court") reversed the lower Court's decision finding that Defendants violated the UFTA when, in winding down Westgate, they disbursed all of the company's

assets to themselves and other unsecured creditors when they knew about their potential liability to Cullen on its arbitration claim. The Illinois Appellate Court held, *inter alia,* that:

a)  Robert Halpin "fraudulently conveyed Westgate's funds to insiders, namely [Debtor] Burnham [Partners, LLC], himself, and his wife *[i . e.,* LoriHalpin].

b)  Defendants, Halpins, violated the UFTA when, in winding down Westgate, they disbursed all of the company's assets to themselves and other unsecured creditors when they knew about their potential liability to Cullen on its arbitration claim.

c) Westgate did not receive reasonably equivalent value for the transfer of $400,000.

d) Westgate, through its transfers to Burnham, concealed its assets from Cullen and became insolvent after the transfers, all of which occurred just 2 months before the arbitration award was entered and 10 months after Cullen's demand for arbitration. Thus, 9 of the 11 "badges of fraud" weighed in favor of a presumption of fraud.

e) Westgate's transfers of all of its assets to Burnham and then to the Halpins shortly before a judgment was entered against Westgate did impair the rights of Cullen and were fraudulent in violation of section 5 of the UFTA.

f) Halpin owed a fiduciary duty to Cullen as a creditor. In making this decision, the Illinois Court stated as follows at paragraph 46 of its decision:

"Lastly, Cullen argues the trial court erred in finding that Robert Halpin did not owe it a fiduciary duty. We agree with Cullen–the corporate veil should have been pierced and Burnham and Westgate are the same entity. Once Westgate became insolvent, Halpin, as the manager of Burnham, owed a fiduciary duty to Cullen as a creditor of Westgate to manage its assets properly and in the best interest of creditors. See *Paul H. Schwendener, Inc. v. Jupiter Electric Co.*, 358

Ill. App. 3d 65, 75 (2005) ("[O]nce a corporation becomes insolvent, the fiduciary duty of an officer is extended to the creditors of the corporation. [Citations.] The fiduciary duty arises because, from the moment a corporation becomes insolvent, its assets are deemed to be held in trust for the benefit of its creditors. [Citation.]"). Halpin breached that duty by making fraudulent, insider disbursements to Burnham, himself, and his wife, that left Westgate with no assets to pay the amount owed to Cullen on the contract."

A copy of the Illinois Appellate Court Opinion is attached as Exhibit "A."

28. Based upon their findings, the Illinois Appellate Court pierced Westgate's corporate veil and held that the Reputed Debtors were the alter egos of Westgate, stating as follow:

"Defendants contend there is no basis for piercing the corporate veil because Westgate kept separate records, was properly funded, and did not have funds that were commingled with the funds of Halpin or Burnham. But, as the trial court recognized, if "a fraudulent conveyance had occurred, then there would be a strong presumption for piercing the corporate veil." In addressing this issue, the trial court found that Cullen "failed to adduce undisputed evidence showing that fraud has been [perpetrated] by the individual [d]efendants." We disagree. As already discussed, Halpin fraudulently conveyed Westgate's funds to insiders, namely Burnham, himself, and his wife. Accordingly, the trial court erred in entering judgment in favor of defendants on Cullen's claim to pierce the corporate veil".

29. The Appellate Court disagreed with the lower court's finding that Burnham was entitled to a $400,000 development fee before paying Cullen or that the other transfers were made in good faith in the absence of documentary evidence to support that finding.

30. The Appellate Court concluded that under section 8 of the UFTA, a creditor in a case of fraudulent transfer may obtain "avoidance of the transfer or obligation to the extent necessary to satisfy" its claim. 740 ILCS 160/8 (West 2012). Accordingly, the Appellate Court remanded to the trial court to permit Cullen to satisfy its Pennsylvania judgment.

31. Following the Appellate Court's Opinion, on or about May 23, 2016, A.G. Cullen obtained a judgment from the Circuit Court of Cook County, Illinois, against the Reputed Debtors in the amount of not less than $690,410.03, plus accruing interest (the "Burnham/Halpin Judgment").

32. The Burnham/Halpin Judgment is accruing interest "at the rate of $75.19 per day from May 23, 2016 until [it] is satisfied in full". As of the mediation date, March 29, 2019, 1,040 days will have passed since the Burnham/Halpin Judgment was entered on May 23, 2016.

33. Having obtained the final and non-appealable Burnham/Halpin Judgment, on February 27, 2017, the Bankruptcy Court authorized A.G. Cullen, on behalf of the Chapter 7 Trustee of Westgate's Bankruptcy Estate, to "commence appropriate proceedings related to the [Burnham/Halpin Judgment] whether by motion, or otherwise, immediately upon the date of entry of this Order, including, but not limited to, the full pursuit of asset discovery in Illinois and all other actions required to collect or otherwise transfer the assets of non-debtor defendants Burnham Partners, LLC, Robert Halpin, and Lori Halpin to the Bankruptcy Estate of Westgate Ventures, LLC pending further approval by [the Bankruptcy] Court as to the distribution of said assets collected[.]" *See* Case No. 12-20111, D.I. 53, at pp. 1-2.

34. Despite A.G. Cullen's significant cost and efforts to investigate and collect assets of the Reputed Debtors for the benefit of Westgate 's Bankruptcy Estate (and at the direction and authorization of the Bankruptcy Court), the Reputed Debtors have succeeded thus far in frustrating those efforts. Not one penny of the final and non-appealable Burnham/Halpin Judgment has been paid to date although the Reputed Debtors contend that they are paying their other creditors.

35. Litigation between the parties continued more than eight (8) years and cost hundreds of thousands of dollars in legal fees.

36. On May 21, 2018 (the "Petition Date"), A.G. Cullen filed an involuntary Chapter 7 petition (together, the "Petitions") for relief against Robert Halpin and Lori

Halpin in order "to collect or otherwise transfer the assets of non-debtor defendants Burnham Partners, LLC, Robert Halpin, and Lori Halpin to the Bankruptcy Estate of Westgate Ventures, LLC pending further approval by [the Bankruptcy] Court as to the distribution of said assets collected" as Petitioner is authorized by the Bankruptcy Court to do.

37. On July 5, 2018, the Reputed Debtors filed the *Motion to Dismiss Involuntary Chapter 7 Petition Pursuant to Bankruptcy Rule IOI I and for Judgment Against the Respondents Pursuant to 11 USC[§] 303* [Case No. 18-22057, D.I. 11; Case No. 18-22059, D.I. 12] (collectively, the "Motions to Dismiss").

38. Subsequent to filing the Motions to Dismiss, the parties engaged in written discovery and depositions.

39. During said litigation, Debtor concealed assets and failed to participate fairly in asset discovery.

40. During and after said litigation, Debtor had even gone so far as to threatening Cullen's Co-Counsel, Richard Kalson, with violence repeatedly.

## BLUE ISLAND PARTNERS, LLC

41. Debtor is now using Blue Island Partners, LLC ("Blue Island") purportedly owned by his son, in the same way that he used Westgate, in this case, to hide assets and to deceive the Bankruptcy Court.

42. Pursuant to the Involuntary Chapter 7 case, Cullen served a third-party subpoena on Blue Island Partners, LLC and took Debtor's deposition in which he was asked questions regarding his relationship with Blue Island. A copy of the Deposition

is attached hereto as Exhibit "B," with the pertinent testimony highlighted. Additionally, attached as Exhibit "C" is a spreadsheet created by the Plaintiff to outline the testimony germane to the issues set forth in this Complaint.

43. In the deposition, Debtor falsely contended that he has no formal position with Blue Island even though he admits to the following facts:

    a) Debtor admits that he freely tenders cards to prospective clients indicating himself as Blue Island's "Executive Director".

    b) On December 11, 2017, Debtor appeared before the Canonsburg Borough Council at their monthly meeting representing himself as the developer of the Blue Island's project in Carnegie. Nowhere was his son mentioned.

    c) Debtor freely admits in a deposition that Blue Island pays most, if not all, of his bills for the services of him to rendering his advice.

    d) Debtor admits that his son has no formal experience in the business and that his son is relying solely on Debtor's 22 years of experience and history.

44. Debtor actually provided bills that were paid by Blue Island which included payment for his apartment and payment on a car.

45. Debtor attempts to hide the fact that he is receiving compensation for his services from Blue Island by stating that he is only doing his son a favor. This is an overt lie.

46. In addition to receiving compensation for his services, it is believed that Debtor is, at a minimum, a part owner of Blue Island, whereby he will eventually reap some of the profits and that this is income fraud, and his fraudulent filings are only part of the continual fraudulent activity.

47. It is Plaintiff's understanding and belief that any net profit from the present project, although may be held in his son's name, will be used to pay debtor's future bills as a form of remuneration for the services he is performing for Blue Island.

48. Debtor continues his fraud and does so in his most recent filing with the Court, specifically on Official Form 106I regarding his income, where he overtly and intentionally states that he is not employed, lists monthly gross wages as $0, lists monthly "other income" at $2,000 (his social security, thus omitting any income from Blue Island), omits the compensation (payment of rent, American Express card, utilities and car) he receives from Blue Island – even though he admits to receiving this compensation in the deposition.

49. On Official form 106A/B at paragraph 19, Debtor does not list his silent ownership in Blue Island.

50. In continuance of this fraud, Debtor provided false testimony to the Trustee in the Meeting of Creditors 341a meeting by stating that he was not receiving compensation from Blue Island for his services.

51. Debtor has also failed to include compensation from his father's trust that he receives on an annual basis.

52. It is believed that Debtor has grossly underreported his social security payments in this form as well.

53. Correspondingly, by not including the Blue Island income, Debtor's statement of income in Official Form 107, for calendar year 2018, is false because of the omission of the income from Blue Island.

## COUNT I - NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE

54.  Plaintiff repeats and re-alleges the allegations set forth in foregoing paragraphs of this Complaint as if set forth at length herein.

55.  Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

 (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this

title does not discharge an individual debtor from any debt--

(2) for money, property, services, or an extension, renewal, or refinancing of

credit, to the extent obtained by --

(A) false pretenses, a false representation or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition.

56.   All or part of the debt owed to plaintiff, as evidenced by the Judgment entered against the Debtor, is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(A).

57. It has already been determined by the Illinois Appellate court, Halpin, while winding down Westgate, accepted the money for the project under the false pretense that it would be disbursed to Cullen, but instead disbursed all of the Company's assets to themselves when they knew about the potential to Cullen pursuant to the arbitration claim.

58. Further, the Illinois Appellate Court further determined, with a complete analysis relating to the "badges of fraud", that Halpin committed actual fraud as stated in in its opinion (See Exhibit #A) and as summarized in paragraphs 27(a) through (f) above.

59. With false pretense, Halpin represented through his actions, that Westgate would act as a viable corporate business, that would disburse funds in strict accordance with the

contract between Westgate and Cullen, when in fact, Halpin had no intention, at any relevant time, of paying Cullen the last payment owed to Cullen but instead, as was determined by the Illinois Appellate Court, Halpin deceitfully took the monies, using Westgate as the alter ego of Halpin and his wife, and paid to them for their own benefit.

60. Plaintiff submits that the Debtor's actions alleged hereinabove, obtained services from Cullen under false pretenses, false representations, or actual fraud, as set forth more fully in the Illinois Appellate Court decision, which constitutes a violation of Bankruptcy Code § 523(a)(2)(A) and establishes grounds for denial of discharge.

WHEREFORE, for the foregoing reasons, Plaintiff prays this Honorable Court enter an order that the debt reflected in the Judgment entered in favor of Plaintiff against the Debtor on November 9, 2005 is non-dischargeable pursuant to Bankruptcy Code § 523(a)(2)(A), and that Plaintiff shall have such other and further relief as is just, including reasonable costs, attorneys' fees, and expenses.

## COUNT II -- NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE

61. Plaintiff repeats and re-alleges the allegations set forth in the foregoing paragraphs of this Complaint as if set forth at length herein.

62. Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—…

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

63. All or part of the debt owed to plaintiff, as evidenced by the Judgment entered against the Debtor, is non-dischargeable as it is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny within the meaning of Bankruptcy Code § 523(a)(6).

64.  As stated by the Illinois Appellate Court, and as repeated in paragraph 27(f) above, "the corporate veil should have been pierced and Burnham and Westgate are the same entity. Once Westgate became insolvent, Halpin, as the manager of Burnham, owed a fiduciary duty to Cullen as a creditor of Westgate to manage its assets properly and in the best interest of creditors. See *Paul H. Schwendener, Inc. v. Jupiter Electric Co.*, 358 Ill. App. 3d 65, 75 (2005) ("[O]nce a corporation becomes insolvent, the fiduciary duty of an officer is extended to the creditors of the corporation. [Citations.] The fiduciary duty arises because, from the moment a corporation becomes insolvent, its assets are deemed to be held in trust for the benefit of its creditors. [Citation.]"). Halpin breached that duty by making fraudulent, insider disbursements to Burnham, himself, and his wife, that left Westgate with no assets to pay the amount owed to Cullen on the contract."

65. Plaintiff's obligation to provide Waiver of Liens before last payment would have created a fiduciary relationship which was breached.

66. Pursuant to 770 ILCS 60/21.02, a construction trust existed as mechanic lien waivers, to the best of Plaintiff's knowledge, were required by the contract and Halpin breached the fiduciary duty associated with said trust. See Sec. 21.02. Construction Trust Funds.

> (a) Money held in trust; trustees. Any owner, contractor, subcontractor, or supplier of any tier who requests or requires the execution and delivery of a

waiver of mechanics lien by any person who furnishes labor, services,

material, fixtures, apparatus or machinery, forms or form work for the

improvement of a lot or a tract of land in exchange for payment or the promise

of payment, shall hold in trust the sums received by such person as the result of

the waiver of mechanics lien, as trustee for the person who furnished the labor,

services, material, fixtures, apparatus or machinery, forms or form work or the

person otherwise entitled to payment in exchange for such waiver.

67. Plaintiff submits that the Debtor's actions alleged hereinabove, namely fraud or

defalcation while acting in a fiduciary capacity, as set forth more fully in the Illinois Appellate

Court decision, constitutes a violation of Bankruptcy Code § 523(a)(4) and establishes grounds

for denial of discharge.

WHEREFORE, for the foregoing reasons, Plaintiff prays this Honorable Court enter an

order that the debt reflected in the Judgment entered in favor of Plaintiff against the Debtor on

November 9, 2005 is non-dischargeable pursuant to Bankruptcy Code § 523(a)(4) and that Plaintiff

shall have such other and further relief as is just, including reasonable costs, attorneys' fees, and

expenses.

### COUNT III -- OBJECTION TO DEBTOR'S DISCHARGE UNDER SECTION 727(a)(2)(A) and  SECTION 727(a)(2)(B) OF THE BANKRUPTCY CODE

68. Plaintiff repeats and re-alleges the allegations set forth in the foregoing paragraphs

of this Complaint as if set forth at length herein.

69. Bankruptcy Code § § 727(a)(2)(A) and 727(a)(2)(B) provides that:

(a) The court shall grant the debtor a discharge, unless—

…

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

70. Pursuant to § 727(a)(2)(A) and § 727(a)(2)(B), the Debtor should not be granted a discharge as the Debtor, with the intent to hinder delay or defraud Cullen, has attempted to conceal property of the debtor by hiding income and property that he has received from Blue Island within one year before the filing of this Chapter 7 petition and continues to conceal income and property he has received from Blue Island since the petition was filed. (See ¶¶'s 41-53 above).

71. By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 727(a)(2)(A) and § 727(a)(2)(B).

WHEREFORE, for the foregoing reasons, Plaintiff prays this Honorable Court deny debtor discharge of the debt reflected in the Judgment entered in favor of Plaintiff against the Debtor on November 9, 2005 pursuant to Bankruptcy Code § 727(a)(2)(A) and § 727(a)(2)(B) and that Plaintiff shall have such other and further relief as is just, including reasonable costs, attorneys' fees, and expenses.

### COUNT IV -- OBJECTION TO DEBTOR'S DISCHARGE UNDER SECTION 727(a)(3) OF THE BANKRUPTCY CODE

72. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 68 of this Complaint as if set forth at length herein.

73. Bankruptcy Code § § 727(a)(3) provides that:

(a)The court shall grant the debtor a discharge, unless ...

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

74. The Debtor, in his operation of Westgate, operated the business as his alter ego, seeking to shield himself from personal liability while at the same time using funds of these businesses for personal purposes.

75. The Debtor, in his operation of Westgate, concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained. (See ¶ 23 above and ¶'s 10 and 12-18 of the Illinois Appellate Court Decision-Exhibit #A).

76. By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code §727(a)(3).

WHEREFORE, for the foregoing reasons, Plaintiff prays this Honorable Court deny Debtor discharge of the debt reflected in the Judgment entered in favor of Plaintiff against the

Debtor on November 9, 2005 pursuant to Bankruptcy Code § 727(a)(3) and that Plaintiff shall have such other and further relief as is just, including reasonable costs, attorneys' fees, and expenses.

### COUNT V -- OBJECTION TO DEBTOR'S DISCHARGE UNDER SECTION 727(a)(4)(A) OF THE BANKRUPTCY CODE

77. Plaintiff repeats and re-alleges the allegations set forth in the foregoing paragraphs of this Complaint as if set forth at length herein.

78. Bankruptcy Code § 727(a)(4)(A) provides that:

(a) The court shall grant the debtor a discharge, unless ---

(4) the debtor knowingly and fraudulently, in or in connection with the case --

(A) made a false oath or account.

79. The debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account, in that he represented in his most recent filing with the Court, specifically on Official Form 106I (regarding his income) where he overtly and intentionally omits the compensation (payment of rent, American Express card, utilities and car) he received from Blue Island even though he admits to receiving this compensation in the previous deposition.

80. The Debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account under oath in a deposition, in that he represented in a deposition that he was not presently employed and he overtly and intentionally omits that the compensation (payment of rent, American Express card, utilities and car) he received from Blue Island is income for services rendered.

81. In his Statement of Financial Affairs attached to his Petition he omits any mention of employment with Blue Island and grossly under states his yearly income for the last three years.

82. The debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account, in that he failed in the Statement of Financial Affairs attached to his Petition to provide required information about the nature, names, taxpayer identification numbers, locations, and beginning and end dates of all businesses in which the Debtor was an officer, director, partner or managing executive of a corporation, partner in a partnership, sole proprietor, or was self- employed in a trade, profession or other activity either full or part-time within six years immediately preceding the commencement of the case.

83. Debtor attempts to hide the fact that he is receiving compensation for his services from Blue Island by stating that he is only doing his son a favor. This is an overt lie.

84. Debtor has also failed to include compensation from his father's trust that he receives on an annual basis in his recent Court filings regarding his finances.

85. It is believed that Debtor has grossly underreported his social security payments in this form as well.

86. Correspondingly, by not including the Blue Island income, Debtor's statement of income in Official Form 107 for calendar year 2018, is false because of the omission of the income  from Blue Island and trust.

87. By virtue of the Debtor's false representations and omissions, and the oath he took concerning the veracity of his submissions, the Debtor's discharge should be denied under Bankruptcy Code § 727(a)(4)(A).

WHEREFORE, for the foregoing reasons, Plaintiff prays this Honorable Court deny Debtor discharge of the debt reflected in the Judgment entered in favor of Plaintiff against the Debtor on November 9, 2005 pursuant to Bankruptcy Code § 727(a)(4)(A) and that Plaintiff shall have such other and further relief as is just, including reasonable costs, attorneys' fees, and expenses.

Plaintiff reserves the right to amend this Complaint.

JURY TRIAL DEMANDED

Respectfully submitted,

By: /s/ *Gusty A.E. Sunseri*

Gusty Sunseri, Esquire
Gusty A. E. Sunseri & Associates, P. C.
1290 Freeport Road
Pittsburgh, PA  15234
Telephone (412) 968-0210
Fax (412) 968-0254
Gusty-sunseri@verizon.net

Counsel for Plaintiff
A.G. CULLEN CONSTRUCTION, INC.

Dated:   November 19, 2020